Ready to go. May it please the court. This case presents this court with the question of whether or not the government may choose not to abide by a statutory command simply because it does not want to. In this case, the government said below that they have a policy of not giving its reasons for consenting to a dismissal of a false claim action because they're policies that might influence future actions. This is despite the actual statute, which requires both the attorney general and the case to actually give their consent, both of them, and state their reasons for consenting. Neither the government nor the district court did in this case. What they did do — What would be the remedy if you were right on that statutory argument? The remedy would be for — we asked for two remedies, one the alternative. The court obviously could remand this for both the government and the district court to state their reasons for consenting. But given the substantive nature of how this case was dismissed, being in the 41A2 context, that the court could render in our favor that the dismissal should have been with prejudice as to both the government and the named relators. That's your next substantive argument. Correct. But they are related because both the reasons for consent requirement in the statutes and the same exact provision that requires the relators to bring an action on behalf of the United States government and in the name of the United States government, necessitating that if their case is dismissed with prejudice, so is the government's case. It's the same case. As the district court below said, you can't separate the monkey from the organ grinder. In this case, they only had one claim as relators. It was a False Claims Act case — claim, Keytown claim, on behalf of the government. Now, what they did is they offered to dismiss that claim with prejudice three and a half years after they declined an option to dismiss the case because they had seen that they were going to face some adverse rulings in this case. First, they were going to see that the second case in which they had a secret interest in with another relator in Georgia was to be transferred to Texas and ultimately dismissed pursuant to the first to file bar in the False Claims Act. The case has stayed now, right? I'm sorry? The Georgia case has been stayed, pending what we do? It has, Your Honor. And the reason why it has been stayed is because, unlike this court, which has decided that the first filed bar is jurisdictional and the second case must be dismissed had it been transferred here, in the Eleventh Circuit there's been no such determination. And so, because there's been no such determination, my clients run the risk of having to go to Georgia, relitigate a transfer venue determination that was decided in their favor in 2015, possibly face an adverse ruling on that, in which case the case would go forward and not have to be refiled. And had it been refiled, my client's statute of limitations defense would take hold in this case had it been transferred. But there's nothing preventing you from making the first to file argument in Georgia, I assume. That's correct, Your Honor. They're going to make the argument. That's correct, Your Honor. We have still made the first to file. In fact, we did file motions to that effect, but the case was stayed. Now, I think where that goes is, well, is it really prejudice unless you know you're going to lose? But this Court has repeatedly decided, including in the Al Brower case, in the Iko Spintakis case, that it's not whether or not there's a certainty that we will lose a defense. It's where there's a risk that my clients will lose a defense. And there's certainly a risk here. The risk is that this case that had been on file for four years, that the judge had determined that venue was proper in Houston, that the judge had determined that there was probably no kickback and seemed poised to rule in that determination, which we filed a motion for summary judgment asking that. All that's wiped away so that we can go restart in Georgia, make the same arguments all over again, re-litigate all over again, and the result will be that we might not get the same result we would have in Texas. When you say re-litigate all over again, though, there had been no discovery. There was no summary judgment motion. And the motion that had at last been denied was your motion to dismiss. So it doesn't seem like the prejudice argument seems a little strained. The prejudice is on multiple grounds, but on the summary judgment ground, it's whether or not there's a threat that the summary judgment would be entered. And we believe that the record shows that at least that's that, in our view, was likely but should have been considered first. But also that the motion to transfer venue, which we had requested the Georgia case to be transferred to Houston and being consolidated with that case and then be dismissed, was definitely right. In fact, the district court below observed that the second filed case was nearly identical to the first filed case, but based on the other case, the district court said it's going to be too costly, we're out. And you — that's preclusivist to them. It's with prejudice. And if it's conclusive as to them, it should be conclusive with respect to the government and the other relators. But there's almost no circuit authority that states that. I guess I was going to — you might say the Seventh Circuit inches there. You've distinguished in your brief R. Williams' decision. That seems pretty central. Could you explain again why it wouldn't be appropriate to reduce that rule to, if not on merits, government isn't also precluded? Why isn't that the takeaway from Williams? It is, Your Honor. And we believe that a — with prejudice, determination on a voluntary dismissal is on the merits. On the merits doesn't necessarily mean the weighing of the facts. In fact, this Court, when it decided Williams, distinguished Schimel. Schimel's a Ninth Circuit case that, granted, was a summary judgment. But if the plaintiffs just say we're exhausted or if their lawyer is malfeasant, why would the government then get prejudiced elsewhere, where they have a parallel investigation? Because the government has two options at that point of a voluntary dismissal under the statute. It can either veto the dismissal, which it didn't do, or it can intervene, which it didn't do. What it did was a third option, which was a bifurcated dismissal, which the U.S. Supreme Court in Eisenstein seemed to indicate was not appropriate. Because there's one claim. In fairness, there is a pretty overwhelming practice, at a minimum a practice, that a relator can be dismissed with prejudice, the government without prejudice. Not at the voluntary dismissal stage, Your Honor. Just as a general matter. On a 9b motion. And we — and actually, I think that makes perfect sense. If the relator — One of the reasons it might make sense is, from the constitutional standpoint, you're familiar with the Riley case. There is this tension in these relator cases where we're concerned about relators misusing the executive power. Is it the denial without prejudice, or I'm sorry, the dismissal without prejudice, in a sense, to make sure that the United States' interests are not disparaged? I believe the Williams case was pretty explicit on that fact, in that if a complainant files something that is so devoid of specifics that it doesn't pass 9b and just requires the government to intervene and fill in the blanks, that's not appropriate. And so that's what this Court decided was, that the dismissal should have been without prejudice, which most 9b dismissals should be. Your argument is Rule 41 is different. Correct. That's correct, Your Honor. And the reason why it's different is because — and not just Rule 41. Rule 41a-2, a Rule 41a-1 motion before an answer or summary judgment probably also should be without prejudice. The Court's long history of 41a-2 motions deal with the certain circumstance we're here today. This isn't just two separate relators who happen to have the same case. Now one dismisses because they're tired. They're in a contract together where they have a sharing agreement. But they disavow. Only — well, if you read the amendment, it's a little ambiguous, but at least the attorneys in the first filed case still have an interest in the second filed case. And so it's attorney-driven, but the attorneys for the relators still have a contingency fee in this Georgia case. And so their interest is attorneys, at least. Maybe the relators want to go home. The attorneys are saying, no, our clients want to go home, but not disclosing that they stand to recover in the second filed case if it's allowed to go forward. That's why they're fighting the dismissal with prejudice as the government so hard. It's not just the government saying it should be without prejudice as the government. It's the Relators Council in this very case where they claim they're tired. They're not. Do I understand that the United States has been investigating this issue, not saying they're going to reach a particular conclusion, but that they have been investigating since well before, at least months before, the Houston case was filed? Correct. They had investigated both cases for four years and finally declined to intervene in both cases. And the investigation was based in Georgia, not Texas? That is actually not true, Your Honor. It was based in both. They were jointly investigating the matter. What they point to is a statement in one of the motions to extend the seal where they claimed that part of the investigation was based in Georgia by the OPM, which is the Office of Personnel Management, not the actual U.S. Attorney's Office. Both Northern District of Georgia and Southern District of Texas investigated this case thoroughly. The point is that, fair enough, I stand corrected, but my point is there's like nothing particularly inappropriate about ND Georgia looking at this issue. Only that we have to re-litigate the same venue issue that was decided. You said they chose door number three, which they can't do, but one and two would have been available? Correct, Your Honor. Had they intervened, is there anything that would have restricted the government from then moving for a voluntary dismissal without prejudice? The district court having to consent to that. Right. But the district court had already made it clear in April 1st, 2015, that this court — if this case is to go forward, it's going to go forward in the Southern District of Texas. And if the interest is to — of the government, which is why them stating their reasons for consenting is important, is because they want to be able to pick up the case again in Georgia years after that determination, the district court has every right to say that's not right. But there was a hearing, and the government articulated its reasons, right? The government said, we've got a choice here, and that's our choice. The government refused to articulate its reasons. I thought there was sort of an exchange, admittedly not in writing. It was an exchange in which the court said, you're supposed to articulate your reasons, and you haven't. Maybe this one, the case is where you should. And the government said verbatim, Your Honor, as the court has observed, it's typical that the United States does not state a specific reason why. And the court said, despite the rule, and the government said, we have, by granting consent, that shows by inference that there has been some thoughtful procedure into the decision of the consent. So at best, the government is saying you can infer the reasons. That's not what the statute says. If you're looking at the government's brief at page 18, it looks like they offer the better use of government resources. Is it fair to say that that's the reason they're invoking? That's not what they told the court. At the 2017 hearing, they're referring back to pleadings two years prior, and then asking this court to infer those reasons. The transfer memo. It was when the transfer was denied. Are there any other investigations of biologics nationwide, other than Texas and Georgia? No, Your Honor. I'm sorry? That you know of. No, Your Honor, there are not. And that's kind of the point as well. While it's a False Claims Act case, it should have an end, just like all other litigation. And continually extend it out and extend it out is not the purpose of the statute. The statute is one case that gets decided publicly, either by the relator going forward or the government going forward, not being able to try in one case and then have their cake and eat it, too, because they don't like that case, so they pick up a second case. That undermines the purpose of the first-to-file bar, but it also undermines the purpose of the six-year statute of limitations that would apply to any second-filed case that would have to be refiled. This case in Georgia should have to be refiled. And if it had been transferred to Texas, it would have been dismissed and then refiled and then cleared out on limitations. But they avoid that by — It's not pending. I'm sorry? It's not pending. Why would it have to be refiled? Because this court — I'm sorry? Georgia case is still pending. It's just been stayed. So why would it have to be refiled? Pursuant to this Court's decision in all State, U.S. branch versus all State, the first-to-file bar is jurisdictional. So this Court, as many other circuits have found, that a second-filed case that has been brought has to be dismissed and refiled no matter if the second — if the first-filed case goes away or not. Once — it has to be refiled after the second-filed case is dismissed, but it can't just be amended and continued. In the same jurisdiction? In the same — or in any jurisdiction. It has to be refiled somewhere. And that's clear in this circuit. It's clear in about three or four other circuits, but not in the Eleventh Circuit. Before you sit down, could you address what's sort of in the footnotes? Speaking of jurisdiction, you filed a timely notice of appeal from what adverse ruling? From the — from the Court's adverse ruling denying our 59 — our motion for retrial. First or the second? Both. And it was because we filed a motion for clarification when the adverse ruling would trigger our — our need to appeal, and the Court gave us that clarification. It was based upon his then denial of both motions. And so we filed a motion for clarification, which was immediately denied. Then we filed a motion for a new trial within the 28 days we had from the original judgment, and then asked the Court to clarify that his denial of that second motion is when we should judge our right to file a notice, and he gave us that clarification. And so that's why we don't feel that we're out of time. Great. Thank you. May it please the Court. Sushma Soni for the United States, appearing as amicus, supporting the relator in the district court decision. I'd like to make just a few brief points about bail helicopter before moving directly on to some of the defendant's statements about the — the failure to state reasons. So what this Court is being asked to do by the defendant is really fairly extraordinary. In our view, they're asking that this Court hold that the district court abused its discretion by essentially following this Court's precedent, and that precedent is bail helicopter. And its opening brief, the defendant's opening brief, does not even address what we view as the controlling precedent that's squarely on point. And it's on point because in that case, the district court said, I'm going to enter a motion to dismiss with prejudice exactly what the defendants want in this case, because the defend — the relators in that case, they failed to — to survive two separate motions to dismiss. And if the United States had cared that much about this case, they should have intervened, and they should have taken it over and fixed this, essentially. And this Court said, no, that was inappropriate, because there had not been a decision on the merits. And this Court made two important points. That is, first of all, the statute does not require the United States to come in and intervene in every meritorious case. And the second is that that district court's reasoning under that, it created this perverse incentive for relators to file inadequate pleadings, knowing that the government would have to come in. So in our view, the Court's very pragmatic view of the statute is exactly what applies here. And it is — because it is a sound and pragmatic view, that is why district courts over the to find that in those cases, the United States should be dismissed without prejudice because there had not been a decision on the merits. Is there any disharmony in the circuits? Would you say the Seventh Circuit doesn't interpret? I call it Williams. To let the government off. Honestly, Your Honor, Lusby — Pardon me? I take it, Your Honor, that you are referring to Lusby, the Lusby case. We view that case as consistent. Now, defendant relies on that case, but it is a very factually complicated case. It involves claim preclusion. There was an initial suit by the relator in that case, which was an employment retaliation case. And that was settled between that relator and the defendant. And then the relator filed a second case, which was a False Claims Act frauds case. And the district court there was saying, well, they viewed that that was — it was precluded by the earlier case. When it got to the Seventh Circuit, but the Court said that the United States should be The Seventh Circuit was concerned because the first case, while it was a decision and it bound that particular relator, it was a case in which the United States was not a real party in interest, and it could not have intervened. And therefore, the Court was very concerned about this. And in the end, the Lusby court said that that earlier employment retaliation case was not race judicata. That took care of the problem. It joined this court, in fact, on that point. But the important language out of Lusby is that it said, if the relator had litigated this case to the gills and lost, the United States would be bound and all other relators. And we agree. We agree with that, that it's always been the government's position. We agree with the language in Eisenstein, where there is a colloquy between the Supreme Court and the Supreme Court, where the relator says, well, actually, even though the United States is just a real party in interest and it didn't intervene, we should treat it as a party in this case because when the relator loses, there's a judgment against the relator, it binds the United States. And the Supreme Court says, well, that's because there are circumstances in which a nonparty is bound, and it's cited to Taylor v. Sturgill. So that's a FOIA case about race judicata. We want to turn to the statutory duty to state reasons. I beg your pardon? The duty to state reasons. Oh, if I can jump directly to that, Your Honor. There was no surprise in this case. There was no mystery as to what the government's reasons were. Defense counsel is proposing that you all, the United States takes the formal position that you don't have to provide reasons. Is that true? No, Your Honor. So when the AUSA said that language to that effect in the hearing, she was not referring to the reasons that we gave in our various documents. There were very obvious, facially obvious reasons why we were consenting. She was referring to the strategic reasons, the strategic, you know, assessment of the pros and cons of different cases that the government necessarily makes when it looks at any relator case. Right? The government's not going to disclose those. It's not going to say, well, we think this case is better in these respects and this case is better in those respects. And this has pros and this has cons. We're not going to get into that. The United States acknowledges that you have the duty to provide reasons. Right. We, and in fact, we provided reasons here. There was no secret. First of all, there were the, let's call them the macro reasons, the larger reasons. Those were, and those are the same in almost every case. Right? So the United States, you know, the purpose of that provision 3730B1 is to make sure the United States has notice that the relator wants to voluntarily dismiss and give the United States a chance to look at the circumstances. Is perhaps the relator trying to cut a deal with the defendant? Is something funny going on that would prejudice the United States? And if the United States determines that in fact that is not going on, that's what happened here, then typically the United States will give its consent so long as the United States rights are protected. And that's that caveat that was in the document that we filed. So as we give our consent provided that it is without prejudice as to the United States, that's the protection for the U.S. So usually the reason, the reason that the United States is consenting is kind of obvious on its face. We're not going to force an unwilling relator to continue his case. It's that simple. It is, as I say, clear on its face. We don't conscript people to continue their lawsuits. But you do look at what the relationship is and the reason a little bit. Does the record reflect whether there's any ongoing shared interest with the Vaughn plaintiffs and the Georgia plaintiffs? Your Honor, that might be better directed respectfully to the Relators Council. I believe that the AUSA said this in the hearing. We don't get involved in relator-to-relator relations with any kind of agreements they have. You know, here we're concerned about the relator and the defendant cutting the government out with a secret deal. Why is this all taking so long? Well, actually, Your Honor, there are ongoing investigations even now of these allegations. In other states? I'm sorry? In other states? I can't speak to that. But I believe that there were, and this is to correct something that the defendant stated, which is that this was from the beginning largely a situation in which the Northern District of Georgia took the lead. In fact, the civil investigative demand that was issued in the Northern District of Georgia, not in the Southern District of Texas. So — The district court called it a tag-along up there. I beg your pardon? Didn't the district court call the Georgia case a tag-along? The district court called that case many things, Your Honor. The district, certainly the district court here did make clear that he viewed this case as the first, the first to file. And that is something that would be determined in the other case. But it was — I beg your pardon? Didn't the original shared agreement, sharing agreement, attribute 70 percent? I just — you're telling us the district court called it many things and the Georgia case is the principal one. What's the record support for that? Well, Your Honor, I don't want to get into any of the related — No, I'm just asking you to support the statement you just made. Yes. Well, there's a distinction between whether Northern District of Georgia, the U.S. Attorney's Office, and the regional offices of agencies in Atlanta were taking the lead versus that relator's lawsuit. I'm making a distinction there, and I should have been more clear. But in fact, as I said, there was no mystery. The district court here understood that the government believed it was more efficient, it would be better to be centralized in the Northern District of Georgia. And the district court actually said, it's record excerpt page 48, they've decided they're going to do that case instead of this one. So there was no mystery here about the government's reasons. And if to the extent that the district — that the defendant is saying we needed to say more very specifically what we were doing so that they could review it in some way, well, I think the answer to that is U.S. Ex Real Michaels v. Agape senior community. There is no way to review the government's reasons. We just have to give them. So we ask the court to affirm the district court decision. Thank you, Counsel. May it please the Court. Kurt Kuhn on behalf of Appellee Vavon Relators. The substance of the consent requirement of Section 3730B has been in the False Claims since it was signed by President Lincoln in 1863. And not surprisingly, in 155 years, no court has ever interpreted that consent provision as United Biologics asked you to do here. In fact, this court and every other circuit has said the exact opposite. The heart of their argument is that you can't have a dismissal with prejudice of a relator without dismissal of the government. And that's the exact opposite of what this court said in the Williams case. It's the exact opposite of what every other circuit to address it has said, including the cases we cited from the Second Circuit. And those cases are not all about Rule 9, how they try to distinguish it now. In some of those cases, it's cases where the attorney in particular who represented the party had an ethical obligation or a conflict because of how they got the information about the False Claims claim and was struck. In other cases, it's where they didn't follow the proper procedure and they filed it not under seal. And so the court decided this isn't the proper party to go forward. There's even a case from the Southern District of Mississippi, the Holmes case, which held that it was with prejudice to the relator and without due to ethical violations. And this court affirmed that decision. So the idea, in fact, most surprisingly, the House of Ruth case that they rely on for their argument about written rules, that's a voluntary dismissal with prejudice to the relator without prejudice to the government. The very case they cite to you is exactly what's happening in this case. There's never been any decision that has ever said, and Lesby, Your Honor, I think is directly on point, your comment about it. It says in it, right, if they had litigated this to Gills and lost, then it would affect the government. There's no dispute about that here. But this is a voluntary dismissal with prejudice to the relator. It has absolutely nothing to do with the merits and it shouldn't affect the government. Anybody who knows me knows that I would never like to share my time at this lectern because it is so limited and I get to be here so infrequently. But the government obviously has way more interest in them than we do, which is why when they asked to go first, I have no problem with that because after 20 plus years of practicing law, I am here arguing for my client to lose, right? But I guess that you know my question that they urged that I ask you. What is your ongoing interest? Is there anything in the record that reflects some? The Vaughn relators have absolutely no ongoing interest. What they try to get money from the Georgia case. They get absolutely no money from the Georgia case. The only thing they can point to is there's a provision in the agreement that says if there are excess funds, you agree, Georgia relator, that you will give a donation to an entity designed to, it's a non-profit entity, to promote, and I had the words right in front of me but I left it at the table, allergy issues. And it gives this association as an example. There's nothing that requires that donation. There's nothing that requires it to be that entity. There's nothing that controls it, right? But the Vaughn four doctors, right, the four relators who are here, said when the hearing happened, they still maybe had an interest based on the sharing agreement. And the district court raised that issue. And the Vaughn relators said, you know what, we don't care. We give it up. And we filed something amending it showing that we give it up. And the court knew that before it entered the dismissal. Do you have any idea what the government's going to do? I couldn't tell from Ms. Soni's explanation. Well, the government has indicated that they have not intervened in that case yet, right? And I can't say whether or not they will, and I don't know. But what happened at the hearing, and this goes to your question about whether or not the facts were discussed, the reasons were discussed at the hearing. They filed a written consent, and the statute says it has to be a written consent and give their reasons. There's no dispute in this case. They filed written consent, and the court gave a written order. But, Your Honor, to your question about what the government's going to do, at the hearing, the judge said, I'm not going to rule on this until the government's here. And he called up the government lawyer and had her come on a moment's notice. And what she said was, our understanding is, this case is going to be dismissed, and that case can go forward. And what the judge said is, she made clear, the judge said, the U.S. Attorney made clear that the intent is for that case to go forward. That being Georgia? The Georgia case. Whether or not the government will intervene in that, I don't know. But I think it's clear everyone's intent is, the Georgia case will go forward, and this will go away. This has all been going on for a long time. I mean, if the government doesn't do something, it's much to do about nothing. I appreciate that, Your Honor. I think that's probably true. And I think it's an indication that there is something here. But, you know, one of the arguments they make about whether or not they're prejudiced in any way whatsoever is this idea that it's been going on a long time. But the time from when they filed their answer, and the initial scheduling conference, and when this dismissal was filed, is a matter of weeks. This actual case, nothing was happening because, and we don't have any control over that either, the government's investigating it, right? And there's a statutory requirement about how many days they have to decide whether or not they'll intervene. Extended it. Right, and that was extended. And we don't have any control over that. And I think that it's clear from the record, I mean, the government filed a motion to transfer and made clear its reasons why it believed it was better in Georgia. At the hearing, it was clear that they believed that the case should go forward in Georgia. So whether or not they intervene or not, I think it's clear the government thinks the case should be in Georgia. And one reason that might be is my individual clients are physicians who believe that their practice is improper, fraudulent, what have you, right? The Georgia case is a whistleblower. And their claims are, I mean, there's substantial overlap between them, but they are different. It's not the same counsel both with sets of relators? Originally, it was not, Your Honor, and they have the sharing agreement. And so this counsel now has agreed to continue on in that case to the extent it does. But they're not the same. I mean, one of the arguments they keep making is that the Georgia relator somehow still has an interest in this case, right? But that's the sharing agreement they're trying to apply. But it's an interest of zero, right? My clients have got assessed with costs. We didn't recover anything. This case is over. So that case will go forward, right? The Vaughn relators have absolutely no interest in it or control on it. And the fact that the lawyer from this case may now assist the lawyer from that case as their counsel in the Hicks case, Nix case, has absolutely nothing to do with these Vaughn relators. I mean, I wanted to talk just for a second about the extraordinary nature of the idea of why we're here. Because why we're really here is it's a motion to dismiss with prejudice. I mean, there's two things in this case. There's the statutory rule, right, which we can't find any case that has ever said that if you dismiss with prejudice to the individual, you have to dismiss to the government as well.  The reasons have to be in writing, which is not what the statute says. It says written consent and their reasons, which we think we've complied with here. The third issue is Rule 42. We can't find any case where anybody has ever said it was an abuse of discretion for the trial judge to grant a motion to dismiss with prejudice, which is what happened in this case. What they're asking for, they're not entitled to. What they're telling you is we want you to order. There's several things they're asking. One, they're asking you to modify that to also include prejudice with the government, which one, you couldn't do under your court's own precedent because you said you can't dismiss, you can't change it without prejudice to prejudice without giving them a chance to withdraw it. Two, I don't think you can do it under the statute because the statute requires consent and the government didn't give consent in this case. So there would be a special issue there. But beyond that, they ask you to, you could put conditions on it. They say they want you to tell the Georgia case it has to come to Texas, which makes absolutely no sense if the Vaughn Relators aren't here anymore, right? The idea that we're somehow trying to get over this motion to transfer, all of that argument about Rule 42 and what this motion dismisses all assumes that we're running off to Georgia. The Vaughn Relators are done. There's nothing going on in Georgia with them. So what they're asking you to do is enter a condition that this court said in the Bichuk case, which if I remember right was from the same district court, where he put a condition that said, if you refile it, and this was actually the same party, if you refile this, you have to refile it in my court. And the court said that that was an abuse of discretion to put that condition in there. It said that you could have local rules that said if cases were refiled, it has to come back to the same court. But you, district judge, can't make that rule yourself. They're now asking you to put a condition that you said would be an abuse of discretion. You're out. You're paying court costs. You can't come back in. So really, you're just making a very strong argument on behalf of the public and the government. That's exactly right, Your Honor, which is why I'm willing to let her go first. But this is, I mean, that's the irony of this case. What they're trying to do is use the fact that this judge wouldn't overstep his bounds and wouldn't go take the Georgia case and bring it to his own once we're dismissed with prejudice, right? They want you to order him to do that. They want you to decide this. And the first file rule doesn't go away. They actually have additional defenses in Georgia that they don't have here. But they want you to tell the 11th Circuit, we don't trust you to decide these issues in the Georgia case. This is the way this lawsuit works. This is the way relators do this every day. One relator goes down, and the Carter opinion about the first file rule, the Supreme Court says, makes absolutely no sense if you hold the first to file is always right. Thank you. May it please the Court. I want to clarify one thing that's just absolutely not true. If you look at page 62 of our record excerpts, it shows who has an interest in the Georgia case. It's specifically from their amendment to their sharing agreement. And it states, first, all attorneys who have attorney's fees and or costs in the Houston litigation shall recover such statutory fees and costs that would otherwise have been recoverable from the Houston litigation in the Georgia case. And so the attorneys in the Houston case, the attorneys for the relators who are arguing before you here today, claim that they have no interest, the government goes first, they're just here on the public side. That's not true. It's absolutely not true. And the record does not support that. At best, the relators don't have an interest of four named relators. But by the time this dismissal was entered, the only one with an interest at the relator level was Nix, who's a Georgia plaintiff. So can we really have a system where a second filed relator can have their case through other people dismissed, supposedly with prejudice in Texas, so then they could pick it up and go back and do it again in Georgia? That's not fair. That's totally antithetical to 41A2. You don't get to do it twice, especially not in the False Claims Act context. Otherwise, you're extending these out. That's why we've been here for five years. It's not because the government takes its time. It's because they're all taking their time. They want us to start new tomorrow in Georgia. And that's 41A2 says you can't do that, not at this stage of the litigation. What they're also saying and saying you should infer the government's reasons of consent. Is that an argument for us to do something or is an argument for the Georgia court to enforce for us to file? Actually, it should have been an argument for the district court to do something such as either deny the motion to dismiss, voluntary motion to dismiss, or impose reasonable conditions. Now, this court could either modify it or it could send it back. Sending back is probably the easiest option for this court and for two reasons. First, the district court never stated its reasons for consenting. No one makes any argument that you can infer anything from what the district court said as reasons for consenting. The statute says the district court has to state its reasons for consenting. That didn't happen. The district court has to. Now, had they claimed what they claimed to you at the district court level that this was all clear, they just wanted to go to Georgia, I have a strong suspicion the district court probably would have withheld his consent. Because in April of 2015, he said this case is not going to Georgia. It's going forward in this court. This is the first to file court. This is where it's supposed to be. Now they're openly claiming that it's supposed to be in Georgia. They didn't do that below. They want you to infer that from all pleadings years ago before they even moved to dismiss, and that's not appropriate, especially because of the statute. I thought I heard them suggest that quite the opposite. They expect you to win in Georgia on this procedural ground. Well, the government may make a claim that we could have it dismissed in Georgia, but the relators, including the same attorneys in this case and the same attorneys in Georgia, have argued that we don't get a dismissal in Georgia. They argued the opposite. They argued that the first to file bar does not entitle us to a dismissal because this case went away on a voluntary motion to dismiss. And that's different in the Eleventh Circuit if they're right than it is in the Fifth Circuit. That's why we're prejudiced by being in Georgia rather than Texas. If we were in Texas, there is no doubt that the second filed case would be dismissed. That's not true in Georgia. And it's also not fair that they can manipulate the legal machinery as relators to do that because it's not just a plaintiff case. It's a relator false claims key tam action. This Court has said that opportunistic plaintiffs are the danger of the False Claims Act because of forum shopping. And that's what's happened here. When they saw a judge that they didn't like because he was going to rule against them either on a motion to transfer venue, bringing the second case here and dismissing it, or on the motion for summary judgment was inevitable. Well, but in fairness, I think the United States moved to transfer to Georgia before these allegedly hostile statements, right? Two years before, and they lost. But the point is, in terms of a forum shopping allegation, there's been a desire to go to Georgia for some time. Right, but that's correct, Your Honor. But the district court's ruling on that should mean something. It should mean that when the district court in 2015 said the first filed case puts jurisdiction in Southern District of Texas, it should stay there. They're using a voluntary motion to dismiss two years later to undermine that ruling without explicitly stating it, making you infer it at the appellate level, not telling the district court directly that that's what they're doing, giving the implication they have no interest in the second filed case when they do. And all of that's just gamesmanship. And for, you know, granted, this Court has said the potential for forum shopping is not necessarily enough for conditions, but the potential is not a potential in this case. It's happening. This case is being litigated in the second court by the same people with the same interest because they didn't want to be in front of the judge who's going to rule against them. That's why 41A2 requires at least something from either this court or district court to protect us. Thank you, Your Honor.